In the Matter of the Estate of LORENZO BURROWS, Deceased.

Surrogate's Court, Orleans County, April 13, 1931.

*Signor & Signor,* for the executors.

*Frederic M. Thompson,* for the claimant Charles M. Burrows.

*George B. Barrell,* for Alice B. Vought, Edwin S. Burrows and Emily B. Backus.

*Burroughs A. Strickland,* special guardian for Lorenzo Burrows, 3d.

HARCOURT, S.   Charles M. Burrows, one of the executors in this proceeding, has filed a claim against the estate based upon two promissory notes: one purporting to be a note made by decedent to the order of his wife, Louise Moore Burrows, and indorsed by her in blank, dated March 18, 1890, given in the sum of $1,000 and due in five years from the date thereof; the other purporting to be a note made by decedent to the order of claimant, dated September 1, 1891, given in the sum of $280 and containing the statement: " Amt. due in settlement of all accts. to date." It is evident that collection of these notes is barred by the Statute of Limitations unless it is shown by claimant that payments were made thereon, or that new promises were made, sufficient in law to take the same out of the operation of the statute.   Claimant offered in evidence the notes in question and thereafter offered in evidence certain indorsements appearing upon the back of said notes, and, subsequently, receipts signed by claimant purporting to be receipts for the same moneys evidenced by said indorsements, excepting the first two indorsements.   The indorsements and receipts were in the handwriting of claimant.   The receipts were found, in a joint search made by claimant and his coexecutor, in a filing cabinet in the office of the Niagara Falls International Bridge Company, of which decedent was secretary and treasurer.   They were inclosed in an envelope with an indorsement thereon in the handwriting of claimant.   The office wherein the filing cabinet was kept was customarily unlocked.   Claimant contends that because these receipts were found in a box in which testator kept his private papers they were rendered competent as admissions against his estate.   There is no evidence, however, that decedent ever saw the receipts or that they were ever brought

to his attention, and under such circumstances they are not sufficient to show payments made to testator which take notes already barred out of the Statute of Limitations. (*Murphy* v. *Walsh*, 113 App. Div. 428; *Matter of Sutton*, 159 id. 21; *Crow* v. *Gleason*, 141 N. Y. 489; *Brooklyn Bank* v. *Barnaby*, 197 id. 210.)

The indorsements and receipts, however, are inadmissible as proof of payments for the reason that they are both in the handwriting of the claimant and are self-serving declarations in that they were not made at a time when it would be against claimant's interest to make them. In fact, his whole claim rests upon these payments and without them a new promise to take the notes out of the statute cannot be inferred; they are, therefore, self-serving declarations made at a time when it was for claimant's interest to make them. (*Mills* v. *Davis*, 113 N. Y. 243; *Matter of Kellogg*, 104 id. 648.)

Objection to the admission of notes is overruled, with exception to executors. Objections to the admission in evidence of the indorsements and receipts are sustained, with exception to claimant. The claim is, therefore, disallowed.

The will of testator provided as follows:

"*Fourth.* After the payment of the foregoing bequests, I direct my executors, as soon as can be conveniently done, to divide the remainder of my estate into three equal parts and pay over to my son Lynn Moore Burrows one of said parts which I give, devise and bequeath to him, his heirs and assigns; and to pay one share to my daughter-in-law Nellie Sanderson Burrows, widow of my late son Lorenzo Burrows, Jr., which I give, devise and bequeath to her, her heirs and assigns. I will and direct that my executors shall pay over to the Genesee Valley Trust Company the remaining one-third part, to be held by them as trustees to invest the same and pay the income thereof to my son Charles Moore Burrows during his lifetime and, at his decease, to divide the principal into two equal parts and pay one of said parts to each of my grandsons Charles M. Burrows, Jr. and Dewitt M. Burrows, sons of my son Charles, which said parts of my estate I give, devise and bequeath to each of them subject to the life use of my son Charles Moore Burrows as herein provided."

Testator's daughter-in-law, Nellie Sanderson Burrows, predeceased testator, and a construction is asked of that part of the 4th clause of said will wherein the executors are directed to pay one share to her, her heirs and assigns. The will was made February 25, 1920, and on the 28th day of July, 1923, testator made a first codicil thereto, and upon the 29th day of September, 1924,

a second codicil was made by testator. Testator in his original will directed that his executors convert all of his real estate into money and from the proceeds and from his other personal property pay all of his debts and funeral expenses, and the remainder to be used to satisfy and pay the legacies and bequests contained therein, which were $1,000 to each of his grandsons Charles M. Burrows, Jr., and Dewitt M. Burrows, the sons of testator's eldest son, Charles; and $1,000 each to Lorenzo Burrows, 3d, Edwin Sanderson Burrows, Mrs. John H. Vought, Jr., 2d, Mrs. Kenneth Reynolds, and Mrs. Frederick C. Backus, the children of testator's second son, Lorenzo Burrows, Jr.; and $1,000 to his daughter-in-law Beatrice S. Burrows, wife of his youngest son, Lynn Moore Burrows. After the payment of these legacies, he directed that the remainder be divided and paid in accordance with the 4th paragraph hereinbefore quoted.

Testator's two sons and his daughter-in-law, the wife of his deceased son, were appointed the executors of his will. By his 1st codicil he provided as follows: " Whereas, in and by said last will and testament I directed that after the payment of certain legacies and bequests therein made, the balance of my estate should be divided into three equal parts    *    *    *," and directed that out of the one-third part held by the Genesee Valley Trust Company, in trust for the benefit of his son Charles Moore Burrows, there should be deducted the sum of $500, with interest thereon from July 1, 1908, at five per cent to the date of testator's decease, which sum he bequeathed to his son Lynn Moore Burrows in addition to the one-third theretofore bequeathed to him; and by his 2d codicil testator provided: " In addition to the sum given to my son Lynn Moore Burrows, in and by my said will and first codicil, I hereby give, devise and bequeath to him an additional sum of $1,000.00 to be taken from my estate before the same is divided."

Testator's daughter-in-law died September 4, 1923. It is conceded by all parties that the legacy bequeathed to testator's daughter-in-law lapsed by reason of her predeceasing the testator. The executors contend that the words " her heirs and assigns " are words of limitation and not of substitution and that, therefore, testator died intestate as to the one-third bequeathed to his daughter-in-law, and that the surviving children of testator together with his grandchildren, the children of Lorenzo Burrows, Jr., deceased, share in said one-third.

The question is one of intention to be gathered from the whole will, with context and cognate gifts shedding light upon the meaning. Intention is the final test. (*Matter of Evans*, 234 N. Y. 42.)

The law favors a construction of a will which will prevent partial intestacy. (*Schult* v. *Moll*, 132 N. Y. 122.)

Many of the authorities construing similar words to these involved in the case at bar seem to be conflicting, but if the intention of the testator, to be gathered from the whole will, can be determined, then such intention should be given effect. By his will it is evidenced that testator meant to divide his estate as nearly equal as possible between the natural objects of his bounty. It will be observed that he gave to all of his grandchildren each the sum of $1,000, and in the case of his son Lynn, who had no children, he gave the sum of $1,000 to his wife. He then divided his remaining estate into three equal parts and the whole tenor of the will seems to be to show no partiality. In furtherance of this intent to be impartial he appointed his two sons and the wife of his deceased son executors. The persons interested in the construction of the clause involved herein are all descendants of the testator; no collaterals are interested. Was it the intention of the testator, in the event that the legacy to his daughter-in-law lapsed, that the children of his son Lorenzo were to share therein only by virtue of the statute governing the distribution of personal property? If the executors are correct in their contention this will be the result. The law does not favor disinheriting descendants and if two constructions are possible the court will reject the one which disinherits grandchildren. (*Soper* v. *Brown*, 136 N. Y. 244; *Matter of Brown*, 93 id. 295; *Scott* v. *Guernsey*, 48 id. 106; *Low* v. *Harmony*, 72 id. 408; *Matter of Werlich*, 230 id. 516, 520; *Matter of Farmers' Loan & Trust Co.*, 213 id. 172.)

On the other hand, did the testator by the words " her heirs and assigns " intend a broader meaning? It will be observed that this is a will of personalty and in such a will the word " heirs " is not a term of art as it is in a devise of real estate. Its office as a word of limitation, however natural or presumptive where the subject-matter of the gift is land, is by analogy only, and one that is wavering and dubious when the subject-matter of the gift is money. (*Matter of Evans, supra;* 3 Heaton Surr. Courts, 328.)

Again, testator bequeathed a one-third part of the remainder of his estate in trust for the use of his son Charles during his lifetime, with the direction that the same be paid to his two children after the son's death. The other two shares of his remainder he gave outright. In view of this disposition of his estate, it would seem that a construction resulting in intestacy of one-third of the remainder, and whereby the *cestui que trust* of one of the other shares would receive outright one-third of the lapsed legacy, is in direct conflict with testator's expressed intent. If he had

wished his son Charles to have any portion of his estate outright he would have so declared his intention.

In gathering testator's intention it is significant that he used the words " his heirs and assigns " in the legacies to his son Lynn and to his daughter-in-law Nellie, but that in his bequests of the remainder to the children of his son Charles these words are not used, thus indicating that his intention was that in the event of the death of the two former legatees their share was to descend to their heirs or next of kin, and this view is strengthened by the fact that no provision is made by the will of the residue in the event of the death of his son Lynn or his daughter-in-law Nellie, except by the words " heirs and assigns." That he meant by these words that in the event of the death of his daughter-in-law the one-third bequeathed to her should descend to her next of kin, the children of his son Lorenzo, is further strengthened by the wording of his 1st codicil in which he states, as hereinbefore quoted, that he has divided his property, after the payment of certain legacies, into three parts, and by the 2d codicil, which was made after the death of his daughter-in-law Nellie, the words hereinbefore quoted to the effect that he bequeaths to his son Lynn an additional sum of $1,000 to be taken from his estate before the same is divided. The wording of each of these codicils certainly makes it apparent that the testator believed and understood that the remainder was to be divided into three equal parts; and the fact that no change of language was made in the last codicil, published after the death of his daughter-in-law, strengthens the view that the testator's intent, to be gathered from the words " her heirs and assigns," is that the share bequeathed to the daughter-in-law, then deceased, would go to her next of kin. Testator in this codicil reiterates that his estate has been divided. No other meaning can reasonably be attached to these words except that expressed in the original will and former codicil to the effect that the remainder was to be divided into three parts. Under all of the facts herein involved, the words " her heirs and assigns " are construed as words of substitution and not of limitation.

In making this construction I am not unmindful of *Matter of Tamargo* (220 N. Y. 225), nor of the lack of the disjunctive word " or," or the conjunctive word " and." This case is distinguishable from the case at bar because of the facts hereinbefore set forth. The court in *Whitman* v. *Terry* (196 App. Div. 282) very aptly said: " Certainly the case at bar must be decided upon the facts herein involved, and the intention of the testator is not to be determined by applying the construction placed by the courts upon other wills made under varying conditions and circumstances. The

will under consideration must be read in the light of all the circumstances under which it was made."

Objections made to admission of extraneous testimony are sustained, with exceptions to counsel for grandchildren and to the special guardian.

Enter decree accordingly.